```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CORRI DITTIMUS-BEY, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>ERIC TAYLOR, et al.,<br><br>        Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 05-063 (JBS/JS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE**, Chief Judge:

    The question before the Court is whether a recent development in this case -- namely, Camden County's retention of Brian Jacobs, Esq., the husband of Plaintiffs' co-counsel Lisa J. Rodriguez, Esq., to be the County's jail population manager -- requires the disqualification of Ms. Rodriguez as class counsel under Fed. R. Civ. P. 23(g)(1)(B) or (g)(4) or under New Jersey's Rules of Professional Conduct ("RPCs"). The Court considers this matter upon its own motion, pursuant to the Court's "ongoing duty to supervise class counsel in order to protect absent class members." In re Fine Paper Antitrust Litig., 617 F.2d 22, 27 (3d Cir. 1980) (discussing Fed. R. Civ. P. 23). The Court requested further information from counsel and has reviewed the letters of Plaintiffs' class co-counsel Nicole M. Acchione, Esq. (dated August 9, 2013) and Ms. Acchione's second letter (October 24,

2013), and the letter of First Assistant County Counsel Howard L. Goldberg (November 4, 2013).

The Court has reviewed the County's decision to retain Mr. Jacobs as an independent contractor providing jail population management services, a position created as a result of this litigation. At this time, the Court finds no violation of any RPCs by Ms. Rodriguez's continued representation of the class, and the Court finds Ms. Rodriguez continues to satisfy the adequacy requirements of Rule 23(g). Because the Court has an ongoing duty to protect class members, the Court may revisit this question at a later date, should circumstances so require.

1. This case has reached an advanced stage. The action was filed in 2004 by pro se litigants complaining of overcrowding and other deficiencies with their conditions of confinement at the Camden County Correctional Facility ("CCCF"). Ms. Rodriguez was appointed as pro bono counsel in 2005, based on her experience as a federal class-action litigator. At the time, Mr. Jacobs was an investigator in the Camden County's Prosecutor's Office. The Court certified a class for injunctive relief in 2007. Ever since, the parties have been in settlement mode. The First Consent Decree, entered in January 2008 [Docket Item 90], authorized the retention of a criminal justice planning firm, which suggested the County create a "Jail Population Manager" position, among other recommendations. The jail population

manager would be responsible for monitoring, coordinating and ensuring the efficient processing of the jail population and serve as a liaison to the Superior Court of New Jersey, the municipal courts, the prosecutor, the defense bar, and the community corrections programs, the Jail Population Reduction Subcommittee and other criminal justice stakeholders. The Court approved a Second Consent Decree on August 20, 2009 [Docket Item 110], to carry out some of the firm's recommendations.

2. Marie VonNostrand, Ph.D., and her firm Luminosity, oversaw the implementation of the changes, and Dr. VonNostrand served as interim jail population manager until April 2011, pursuant to a Third Consent Decree [Docket Item 121]. A full-time jail population manager was hired in June 2011 but remained in the post for only one year, at which time Lt. Karen Taylor, an existing employee of the jail, took over. The Court granted preliminary approval of a Final Consent Decree on December 26, 2012 [Docket Item 137], but the jail population, which had fallen, spiked again, and Plaintiffs withdrew their motion. [Docket Item 142.]

3. The County renewed its search to find a jail population manager with extensive experience and credibility in the law enforcement community and who was up to the task of coordinating judges, prosecutors, defense attorneys, the Sheriff, the Warden, the new bail unit, and the jail population. The search proved

3

difficult. The County, despite various efforts and postings, received many applications but was unable to locate a suitable candidate. Eventually, one effort to recruit applicants yielded several dozen responses, mostly from non-qualified candidates.

4. Holly Cass, a County official not connected with defending this case, who screened the resumes for the County, selected five or six candidates to interview, including Mr. Jacobs, a retired prosecutor. At the time Ms. Cass selected Mr. Jacobs to interview, she did not know that he was married to Ms. Rodriguez. County counsel Mr. Goldberg then recognized Mr. Jacobs as the spouse of Ms. Rodriguez, and notified Ms. Cass of this fact after the interview was scheduled but before the interview was conducted. After interviewing the applicants, the County decided that Mr. Jacobs possessed all of the attributes it sought in a jail population manager, and Mr. Jacobs became the County's top choice to fill the position.[1]

5. When the County and Plaintiffs' counsel brought the situation to the attention of the Court, the Court requested memoranda on the RPCs and Rule 23 issues raised by Mr. Jacobs's proposed selection. Nicole Acchione, Esq., submitted a memorandum for the Plaintiffs [Docket Item 151], which the County endorsed, and the County submitted its own letter affirming that there are

---

[1] Although the parties provided status updates to the Court throughout the search process, the Court was not involved in any way in reviewing or selecting candidates and is not personally acquainted with Mr. Jacobs.

4

no legal impediments to retaining the services of Mr. Jacobs.[2] In
the meantime, the County finalized arrangements with Mr. Jacobs
to serve as an independent contractor providing jail management
services for the County. He first reported to work on November 4,
2013.

6. The issues presented are (1) whether the Rules of
Professional Conduct require the disqualification of Ms.
Rodriguez, and (2) whether Ms. Rodriguez, as class counsel,
continues to fairly and adequately represent the interests of the
class, as required under Fed. R. Civ. P. 23(g)(1)(B) and (g)(4).

7. RPC 1.7 states in relevant part that "a lawyer shall not
represent a client if the representation involves a concurrent
conflict of interest," meaning that "there is a significant risk
that the representation of one or more clients will be materially
limited by . . . a personal interest of the lawyer." RPC
1.7(a)(2). While disqualification may be required in some
situations where one spouse is contesting another in litigation,
this is not such a case. Here, the parties have been working
collaboratively for nearly six years, and the interests of the
class and the jail population manager are aligned: both seek the
reduction of the jail population to safer and more sanitary

---

[2] Because the parties were asked to submit these documents before
final hiring decisions were made, the Court permitted the parties
to submit the memoranda under seal, see Sealing Order [Docket
Item 148] (entered Aug. 20, 2013), or in camera. Now that the
County has decided to contract for Mr. Jacobs's services as jail
population manager, the parties' memoranda will be unsealed.

levels. Furthermore, the performance of the jail population manager is measured primarily by the objective benchmark of the jail population, in accordance with the Consent Decrees already entered herein. There is no reason to believe that Ms. Rodriguez will advocate for her clients less vigorously because of Mr. Jacobs's contract with the County. If circumstances change, class counsel or Defendants' counsel may ask that the Court re-evaluate the situation. At present, the Court does not find that Mr. Jacobs's contract poses any risk to Ms. Rodriguez's independence and diligence in the representation of the class, and thus there is no concurrent conflict of interest. The parties have the duty to inform the Court of any developments that may require reconsideration of this issue.[3]

8. The "appearance of impropriety" is no longer a basis for attorney disqualification under the New Jersey RPCs, which were amended in 2003. See Bals v. Metedeconk Nat'l Golf Club, Inc., No. 09-4861, 2010 WL 1373558 at *4 (D.N.J. Mar. 31, 2010) (recognizing the amendment and citing In re Supreme Court Advisory Comm. on Prof'l Ethics Op. No. 697, 188 N.J. 549, 552-53 (2006)). Therefore, the Court need not consider whether Mr.

---

[3] Ms. Rodriguez is not the only attorney representing Plaintiffs. Both Ms. Rodriguez and Ms. Acchione have provided able counsel to Plaintiffs, and, during the pendency of this litigation, both joined the law firm of Schnader Harrison Segal & Lewis LLP. In the event that a personal conflict may at some time require Ms. Rodriguez's withdrawal as counsel, the conflict would not necessarily disqualify Ms. Acchione or other Schnader attorneys under RPC 1.10.

Jacobs's contract raises the appearance of impropriety.[4]

9. No other RPCs require Ms. Rodriguez's withdrawal or disqualification. Ms. Rodriguez has always been duty bound to maintain her clients' confidentiality, and there is no reason to suspect her to be incapable of keeping confidences now.

10. Under Rule 23(g)(1)(B) & (g)(4), Fed. R. Civ. P., the Court may consider a broad range of factors "pertinent to counsel's ability to fairly and adequately represent the interests of the class" when appointing counsel, and class counsel has an ongoing duty to "fairly and adequately represent the interests of the class." The Third Circuit has adopted a "balancing approach" to analyzing motions for disqualification of class counsel for conflicts of interest. Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 589 (3d Cir. 1999) (endorsing the balancing approach employed by Judge Adams in concurrence in In re Corn

---

[4] One possible concern is that Ms. Rodriguez may have a financial interest in her husband's continued contract with the County. It is conceivable that an attorney in Ms. Rodriguez's position might take measures to make Mr. Jacobs's performance appear successful. However, as discussed, Mr. Jacobs's performance will be measured primarily by objective criteria, and Mr. Jacobs's success would be shared by Plaintiffs and inmates alike: a decline in the jail population. Furthermore, this is not a case where Ms. Rodriguez advocated for the creation of the jail population manager position in order to install her husband in that post. To the contrary, the County selected Mr. Jacobs only after several other individuals filled the role for several years and only after a long, difficult search to find a qualified candidate.

At any rate, it is too soon to assess Mr. Jacobs' performance or Ms. Rodriguez's response to it, and because the Court need only concern itself with actual conflicts, the Court is not concerned at present with a conflict between Ms. Rodriguez and class members.

Derivatives Antitrust Litig., 748 F.2d 157, 162 (3d Cir. 1984)).

Among the factors to be considered are:

> the information in the attorney's possession, the availability of the information elsewhere, the importance of this information to the disputed issues, actual prejudice that could flow from the attorney's possession of the information, the costs to class members of obtaining new counsel and the ease with which they might do so, the complexity of the litigation, and the time needed for new counsel to familiarize himself with the case.

Lazy Oil Co., 166 F.3d at 590 (citing In re 'Agent Orange' Prod. Liab. Litig., 800 F.2d 14, 19 (2d Cir. 1986)). These cases raised distinct conflicts issues not present here, and the enumerated factors do not capture all the salient issues here. However, in considering a broad array of factors, the Court concludes that Ms. Rodriguez continues to fairly and adequately represent the class.

11. Ms. Rodriguez has diligently and creatively represented Plaintiffs in this matter for more than eight years and has comprehensive knowledge of the case, its history and the coordination efforts with the County. Although Ms. Acchione has served as Plaintiffs' counsel for nearly as long, Ms. Rodriguez's expertise in this case would be difficult to replace. Ms. Rodriguez has a strong reputation for her class-action advocacy and was instrumental in bringing about changes at the CCCF through a series of negotiated court decrees. Ms. Rodriguez and Ms. Acchione have been appropriately candid with the Court about

possible ethical or other issues related to Mr. Jacobs's contract. Most importantly, Ms. Rodriguez's interests are aligned with all other stakeholders -- Mr. Jacobs, the County and Plaintiffs -- in reducing the jail population consistent with the Consent Decrees. The Court is satisfied that the class continues to be fairly and adequately represented by Ms. Rodriguez. Again, because the Court's duty to assure fair and adequate representation for the class is ongoing, In re Fine Paper Antitrust Litig., 617 F.2d at 27, the Court may revisit this issue, if circumstances so warrant.

12. The Court permitted Plaintiffs to file a memorandum analyzing these issues under seal, pursuant to L. Civ. R. 5.3(c), because the document was submitted before the personnel decision was finalized. [Docket Item 148.] The Sealing Order stated that the memorandum would "remain under seal until further Order of the Court, to be entered upon the finalization of the personnel decision." [Id.] Because the personnel decision has been finalized, the Court will enter an Order lifting the seal. Ms. Acchione's supplemental letter of October 24, 2013, and Mr. Goldberg's letter of November 4, 2013, also will appear upon the docket.

13. An accompanying Order will be entered.

| | |
|---|---|
| **November 12, 2013** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |